UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMERICAN SERVICE MARKETING CORP. and AUSTIN SHAW | CIVIL ACTION NO. 09-3097 |
| VERSUS | SECTION " N" |
| PAUL E. BUSHNELL | MAGISTRATE 2 |

## ORDER AND REASONS

Before the Court are two motions: the Motion for Contempt and Sanctions (Rec. Doc. 32) brought by Plaintiff American Service Marketing Corporation ("ASM") and the Motion to Dismiss (Rec. Doc. 38) brought by Defendant Paul E. Bushnell ("Bushnell"). Both motions are opposed. After reviewing the complaint, the memoranda, and the applicable law, the Court rules as set forth herein.

### I. BACKGROUND

The instant case arises out of Bushnell's employment as a website and database manager for ASM. The company alleges that it owns a number of marketing sites on the Internet that allow consumers to access information about contractors in their area, including but not limited to "1-800-repairs.com," "1800repairs.com," "repairs.net," and "repairs.com." Plaintiff Austin

Shaw, who alleges that he is the sole shareholder of ASM, claims to have purchased these domain names between 1996 and 2001 and to have operated them continuously since their purchase. Bushnell was an independent contractor employed by ASM from 2004 performing various website upgrades and database maintenance.

ASM alleges that at some point during his employ, Bushnell surreptitiously re-registered ASM's domain names with DirectNIC, the company that maintains domain name registries, listing himself and not ASM as the owner of the web domains, despite the clear expectation that he would re-register the domains on ASM's behalf. ASM alleges that the change was not revealed until Repairs.com launched a new home contractor registry service in January 2009, when the service began to send spam emails and the vice president of ASM, Kerry Lauricella, attempted to contact ASM's web hosting company and was told that he could not access the sites as ASM was not their owner. ASM also alleges that Bushnell attempted, at some point after January, to sell the domain names.

ASM brought suit for various federal trademark and state law breach of contract claims, and moved for a temporary restraining order requiring Bushnell to return all of ASM's property, including its database, change the registry of the domain names to ASM, and allow the company access to the sites. The Court granted the temporary restraining order ("TRO") on March 20, 2009, and an amended TRO was entered on March 24, 2009.

On March 26, 2009, a hearing was held at which Bushnell argued that the domain names had been abandoned by ASM and that he had purchased them on the open market. The Court entered a preliminary injunction on that date that echoed the amended TRO, but based its findings solely on the state law breach of contract claims, not the trademark claims. The preliminary injunction required Bushnell to, among other things, "refrain from either directly or

indirectly interfering with ASM's operation of its Websites," "update and/or change the registrant information with DirectNic.com for the Domain Names," "preserve and immediately return to ASM all property and proprietary information, including but not limited to, database-related materials and Provider contact information," and "immediately disclose and convey to Kerry Lauricella all password and user names associated with ASM or any service or product concerning ASM and its subsidiaries, clients, proposed clients, or employees, including, but not limited to, passwords to its website hosting corporation, its Domain Name registrant company, and its internet bandwidth provider." Prelim. Inj. at 2-3 (Rec. Doc. 18).

After the entrance of the preliminary injunction, the parties agreed to turn several computers owned by Bushnell over to a third party for a forensic analysis, to determine whether Bushnell has complied by returning all database files and related proprietary information. ASM now brings the instant motion for contempt and sanctions, claiming that the forensic analysis shows that Bushnell deleted files that were covered by the preliminary injunction. Bushnell has also moved to dismiss the trademark claims in this case, claiming that the Court does not have jurisdiction over the claims.

## II. ANALYSIS

### A. Motion for Contempt and Sanctions

In a civil contempt proceeding, the party seeking an order of contempt must establish by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order. *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999) (citations omitted). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts

3

with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (quotation omitted). "The judicial contempt power is a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous." *Martin v. Trinity Industries, Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)). Therefore, the contempt power should only be invoked where a specific aspect of the injunction has been clearly violated. *Id.*

On the showing made, ASM has not established by clear and convincing evidence that Bushnell failed to comply with the preliminary injunction. Plaintiff relies heavily on an analysis of Bushnell's computer performed by a local computer forensics firm. Yet all this analysis suggests is that some number of files[1] were deleted from Bushnell's computer between March 1, 2009 and April 3, 2009, and that some portion of those files were from directories with names related to ASM's business, such as "1800repairs." This is not clear and convincing evidence that Bushnell violated the preliminary injunction. To begin, most of these files are accompanied by dates ranging as early as 2003. While Plaintiffs argue that these dates are not necessarily indicative of the dates on which Bushnell deleted the files, there are some indications that that is precisely what those dates indicate,[2] and the vast majority of the files on the list were deleted prior to the entry of the preliminary injunction. Even if ASM is correct and all of these files were

---

[1] On this point, the number seems to change throughout the briefing. In the original motion, ASM argues that Bushnell deleted 1,701 files in the relevant period "at a minimum." Mot. at 5. In its reply, Plaintiff argues that Bushnell deleted 24,349 files in that period. *See* Reply at 5. While the two figures are obviously not in contradiction with each other, they are so disparate as to be in tension.

[2] For example, on page 45 of the list of deleted files, as part of a list that appears to be files contained in a deleted Internet history cache, a file appears named "Kurt_Engelhardt[1].htm." The date accompanying that file is March 28, 2009—two days after the entry of the preliminary injunction. The date is perfectly consistent with the Defendant viewing the undersigned's Internet biography sometime around the date of the hearing and then deleting the file from his Internet cache, which he would have been unlikely to do prior to this case being filed on March 20, 2009.

4

deleted after March 1, 2009, Bushnell could have deleted files relating to ASM's business in the ordinary course of business before the Court entered its injunction later that month. The significant point is that ASM is unable to show precisely when any of these files were in fact deleted.

Further, relatively few of the deleted files have any obvious connection to ASM's business. The first 11 pages of the list of deleted files, for example, consists largely of deleted RSS news feeds. Reply at Ex. C (pp. 1-11). Pages 18 through 27 of the list are JPEG image files. *Id.* (pp. 18-27). A large portion of the list appears to be files from a deleted Internet history cache. *Id.* (pp. 27-49). Those few files that clearly relate to business operations are dated prior to 2008, suggesting that they may have been deleted long before the issues arose that led to the filing of the instant suit, or are far too small to be the kinds of data-rich files Plaintiffs are seeking.

Plaintiffs argue that the forensic analysis indicates that Bushnell ran the program Norton Ghost on his computer just hours before the computer was turned over for analysis, and that this program is primarily used to surreptitiously delete files, suggesting that Bushnell was attempting to delete files and cover his tracks. Plaintiffs also argue that Norton Ghost may also account for inconsistencies in the dating of deleted files. Bushnell responds by arguing that the program has other uses and was scheduled to run on his computer automatically. *See* Opp. at Ex. 2 (Bushnell affidavit). No matter the uses of the program, the fact that the program was run on April 3, 2009—without some other indication that Bushnell deliberately deleted files referenced in the

preliminary injunction—is not "clear and convincing evidence" of a violation of the Court's orders.[3] Accordingly, on the showing made the motion is denied.

**B. Motion to Dismiss**

Defendant moves pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss counts 1, 2, 5, and 7 of the complaint on grounds that the Court lacks subject-matter jurisdiction over the counts. These counts state claims for unfair competition, cybersquatting, and dilution under three provisions of the federal Lanham Act, which protects trademarks. *See* 15 U.S.C. §§ 1116-17, 1125. ASM also brings a declaratory judgment action asking the Court to declare it the owner of the web sites, marks, and domain names at issue in this case, including but not limited to "1-800-repairs.com," "repairs.com," and "repairs.net." Bushnell also argues that having disposed of the trademark claims, the Court should decline to exercise supplemental jurisdiction over the additional state law claims.

A protectable right in a mark is required to have a cause of action under the cited provisions of the Lanham Act. *See Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008). Defendant claims that because Plaintiffs do not have a protectable right in these various domain names, Plaintiffs have no cause of action and this Court is divested of jurisdiction and must dismiss the counts. Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). "[N]o

---

[3] Plaintiffs also argue that Bushnell uploaded files to a handheld computer or device. Bushnell avers that this device was a telephone and that he uploaded a number of music and photo files in 2008, a year before the entry of the preliminary injunction. The evidence from the list of deleted files is consistent with this explanation. On the showing made, the Court does not find that this conduct constitutes a violation of the preliminary injunction, and also rejects the assertion that Bushnell was required to hand over his phone for inspection by the terms of the preliminary injunction.

presumptive truthfulness attaches to the plaintiff's allegations [under a 12(b)(1) challenge], and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *Montez v. Department of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). "However, where issues of fact are central both to subject matter jurisdiction and the claim on the merits, the trial court must assume jurisdiction and proceed to the merits of plaintiff's case under either Rule 12(b)(6) or Rule 56." *Id.* "Only if the federal statute or constitutional provision invoked is clearly immaterial and is invoked solely for the purpose of obtaining jurisdiction or if the claim is wholly insubstantial and frivolous will subject matter jurisdiction be found lacking." *Holland/Blue Streak v. Barthelemy*, 849 F.2d 987, 989 (5th Cir. 1988).

In this case, the Court finds that the invocation of the Lanham Act by Plaintiffs is not frivolous. Nonetheless, there are serious factual disputes with regard to whether ASM has a protectable right in these marks. Further, the Court finds that affidavits, interrogatories, and other material more adequately suited to consideration under Rule 56 may assist it in determining this issue. Accordingly, the instant motion is converted to a motion for summary judgment under Rule 56. Defendant is granted 28 days leave from the date of this Order to supplement the motion with exhibits appropriate to a motion for summary judgment, or to advise the Court that he wishes to withdraw the motion without prejudice pending further discovery. Upon receipt of the renewed motion, Plaintiffs may respond within seven days with an opposition or an appropriate motion pursuant to Rule 56(f).

### III. CONCLUSION

Considering the foregoing, the motion for contempt and sanctions is **DENIED** and the motion to dismiss is **CONVERTED** to a motion for summary judgment. Defendant is granted 28 days leave from the date of this Order to supplement the motion with exhibits appropriate to a

motion for summary judgment, or to advise the Court that he wishes to withdraw the motion without prejudice pending further discovery.

New Orleans, Louisiana, this 25th day of June, 2009.

                                                             KURT D. ENGELHARDT
                                                             UNITED STATES DISTRICT COURT JUDGE